**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-21-00672-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Six Firearms, | |
| Defendant. | |

The United States of America filed a motion for default judgment regarding "the interest of Jessica Graham and all others" in the firearms named in the verified complaint for forfeiture *in rem*. (Doc. 13.) For the following reasons, the motion is granted.

**BACKGROUND**

Jessica Graham was married to Christopher Wasar ("Christopher") and involved in "a relationship" with Christopher's brother, Matthew Wasar ("Matthew"). (Doc. 1 ¶ 6.) On June 21, 2014, Graham and Christopher "intended to confront" Matthew and searched for him at his apartment while holding his roommate at gunpoint. (*Id.* ¶¶ 5, 7.) The couple eventually found Matthew sitting in a vehicle outside the apartment. (*Id.* ¶ 8.) Christopher "confronted his brother Matthew who exited the vehicle with a knife." (*Id.*) Christopher then shot Matthew in the chest, killing him. (*Id.*)

On December 4, 2015, Christopher was convicted of felony manslaughter and sentenced to five years' imprisonment. (*Id.* ¶ 9.) Although Graham and Christopher divorced in June 2014, they remained in a "committed relationship" after Christopher's

release from prison on September 20, 2018.  (*Id.* ¶ 42.)

On March 27, 2020, Graham, armed with a "pump style shotgun," and Christopher, armed with an "AR15 style rifle" and a "sidearm pistol" and wearing a "vest with a large knife and magazines attached to it," became "involved in an altercation" with a person who was riding a dirt bike in the desert. (*Id.* ¶¶ 11-13.)  Christopher punched the dirt bike rider in the face, and then Christopher and Graham attempted to flee in a truck, while Graham "threw wood pallets and a washing machine from the back of their truck attempting to stop" police officers who were pursuing them.  (*Id.* ¶¶ 14-15.)  Christopher stopped and fled from the truck on foot but was apprehended.  (*Id.* ¶ 16.)  While searching Christopher's truck, officers found six firearms, along with several rounds of ammunition, various loaded magazines, multiple knives, and methamphetamine.  (*Id.* ¶ 17.)

Christopher was arrested and charged with state-court counts of misconduct involving weapons, unlawful flight from law enforcement, and misdemeanor assault, but he failed to appear for his preliminary hearing on October 7, 2020 because he was in federal custody after having been charged with Felon in Possession of a Firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2) due to a separate July 27, 2020 incident in which he was found hiding near an "unlawful campsite full of litter" in the Coconino National Forest with "a shotgun with several rounds of ammunition and a fully loaded handgun" in the area where officers were investigating a dead antelope.  (*Id.* ¶¶ 18, 20, 25-26.)

During the July 27, 2020 incident, before Christopher was found hiding, officers spoke with Graham at the campsite, and she lied to them, stating she was the only person at the campsite and all the trash was hers.  (*Id.* ¶¶ 21-24.)  After Christopher was found, Graham admitted that she lied to cover for Christopher, knowing he was a convicted felon in possession of firearms.  (*Id.* ¶ 28.)  The officers searched the couple's vehicle and found 1.8 grams of methamphetamine, drug paraphernalia, 3,376 rounds of ammunition, and ten firearms.  (*Id.* ¶¶ 29-30.)  Graham claimed to own all the weapons, but while being transported to jail, Christopher stated that he carried a gun, that he bought a gun every 30 days for six years, and that he "shot both of his children with birdshot from a shotgun at

100 yards." (*Id.* ¶¶ 33-34.)

On January 19, 2021, Christopher pled guilty to Felon in Possession of a Firearm, a Class C felony offense, and agreed to forfeit all property seized during the underlying incident. (*Id.* ¶ 37.) On February 11, 2021, the court entered an order of forfeiture. (*Id.* ¶ 38.) On February 12, 2021, the government sent notice of its intent to forfeit the seized property to Christopher's father, James E. Wasar ("James"), and to Graham via United States Postal Service First-Class and Certified United States mail and posted a notice of forfeiture on an official government internet website for at least thirty consecutive days, beginning on February 13, 2021 and ending on March 14, 2021. (*Id.* ¶ 39.)

On March 22, 2021 Graham and James each filed a petition for return of property seized on July 27, 2020. (*Id.* ¶ 40.)

On April 19, 2021, the government filed the verified complaint for forfeiture *in rem* pursuant to 18 U.S.C. § 924(d). (Doc. 1.) The defendants *in rem* consist of six firearms, which are currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives: (1) Diamondback Arms, DB-10 Multi caliber rifle, SN: DB-4014923; (2) SIG Sauer semi-automatic 5.56 caliber rifle, SN: 44B000179; (3) Benelli, S. PA. Super Nova 12-gauge Shotgun, SN: Z5660241; (4) Glock GMBH Model 20, 10mm pistol, SN: BKVU310; (5) Springfield Armory, Geneseo IL EMP, 9mm pistol, SN: EMP73096; and (6) Smith & Wesson M&P Shield, 9mm pistol, SN: JAY2115. (*Id.* ¶ 4.)

On April 28, 2021, direct notice of the forfeiture action was sent to Graham via first class and certified U.S. mail. (Doc. 7-1; Doc. 13 at 2.) Notice of this civil forfeiture action was also posted on an official government internet site (www.forfeiture.gov) for at least 30 consecutive days, beginning on June 12, 2021. (Doc. 10-1; Doc. 13 at 2.) No claim or responsive pleading has been filed or served on the government. (*Id.*)

On June 11, 2021, the government filed an application for entry of default as to Graham (Doc. 8), which the Clerk of Court entered (Doc. 9). On July 12, 2021, the government filed an application for entry of default as to all other interests (Doc. 11), which the Clerk of Court entered (Doc. 12).

On August 12, 2021, the government filed the pending motion for default judgment.

**DISCUSSION**

I. <u>Legal Standard</u>

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id.* "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

II. <u>The First, Fifth, Sixth, And Seventh *Eitel* Factors</u>

"In cases like this one, in which Defendants have not participated in the litigation at all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020).

The first factor weighs in favor of default judgment. If the government's motion were denied, it would be without other recourse for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The fifth and sixth factors weigh in favor of default judgment or are neutral. Due to the lack of any claimant's participation, there is no dispute over material facts and no indication that default is due to excusable neglect.

The seventh factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.

However, the existence of Rule 55(b), which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177.

III. The Fourth *Eitel* Factor—The Amount Of Money At Stake

Under the fourth factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. Here, the "aggregate value of the defendant property" is $1,300. (Doc. 13 at 6.) That is a very modest sum. This factor weighs in favor of default judgment.

IV. The Second And Third *Eitel* Factors—Merits And Sufficiency

That leaves the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint. "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Id*.

Here, both factors weigh in favor of granting default judgment. Taken as true, the factual allegations in the complaint establish that the defendant property was used in a knowing violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Felon in Possession of a Firearm and 18 U.S.C. §§ 2 and 922(g)(1), Aiding and Abetting a Felon in Possession of a Firearm. Christopher possessed the defendant property after having been convicted of felony manslaughter, and Graham aided and abetted his possession of multiple firearms, knowing he was a convicted felon. There is a substantial connection between the property and the offense.

V. Balancing The Factors

Having considered all of the *Eitel* factors, the Court concludes that default judgment is appropriate.

Accordingly,

**IT IS ORDERED** that the government's motion for default judgment against Graham and all other interests is **granted**. A separate judgment shall issue.

Dated this 23rd day of September, 2021.

Dominic W. Lanza
United States District Judge